UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CRIMINAL ACTION NO. 0:16-CR-11-DLB-EBA-1

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V.                         **MAGISTRATE JUDGE'S**
                         **REPORT AND RECOMMENDATION**

HEATHER S. FLUTY,                                            DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

The Defendant, Heather S. Fluty, brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct her sentence. [R. 80]. Consistent with local practice, this matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). For the following reasons, the Court recommends that Fluty's motion be denied.

## II. FACTS AND PROCEDURAL HISTORY

On October 29, 2015, Heather Fluty contacted a deputy with the Lawrence County, Kentucky, Sheriff's Department and, after waiving her rights, gave a statement that she had been trafficking in Oxycodone. She wanted to start a new life and agreed to work with the Kentucky State Police ("KSP") to get some drugs off the street. However, Fluty failed to follow through on her promises. In the meantime, the Lawrence County Sheriff's Deputy was receiving complaints that Fluty was selling drugs.

In response to the complaints, KSP began using confidential informant(s) to purchase oxycodone from Heather Fluty and her husband, Glen, at their residence. Over the course of a year, December 2015 until November 2016, the confidential informant(s) made several undercover controlled purchases of Oxycodone.

On November 3, 2016, Heather Fluty was indicted on one count of conspiracy to distribute Oxycodone, and and seven counts of distribution of Oxycodone. [R. 1]. On November 14, 2016, law enforcement personnel executed a search warrant at the Fluty residence. [R. 60 at 2; R. 92 at 8]. During the execution of the search warrant, investigators discovered several firearms, including one assault rifle and a pistol found in a safe in the master bedroom located near a pill bottle. Investigators also discovered a suspected drug ledger documenting dates and amounts of drug sales. Additionally, investigators discovered $3,772 at various locations throughout the residence. *Id*. Both Glen and Heather Fluty were arrested.

On February 10, 2017, Heather Fluty plead guilty to Count 1 of the indictment, charging her with conspiracy to distribute Oxycodone pills. [R. 59; R. 85]. In consideration for her plea, the United States agreed to move at sentencing to dismiss all other counts against her. [R. 60].

The presentence report, submitted prior to sentencing, outlined the recommended guideline calculations in Fluty's case. First, the guideline calculations acknowledged that the United States agreed at sentencing to dismiss all remaining counts. In addition, the calculations factored a two-level enhancement to the base offense level due to the presence of a firearm. Finally, although in the plea agreement Fluty admitted that law enforcement officers found a drug ledger during the execution of a search warrant at her residence, there is no enhancement to the recommended sentence under the guidelines due to its discovery. Prior to sentencing, Fluty's attorney objected to the two-level enhancement due to the presence of a firearm, however, the Court overruled the objection. Ultimately the guideline range for Fluty was 57 to 71 months of incarceration. She was sentenced to a within the guidelines term of sixty (60) months total imprisonment, three (3) years supervised release, $3,772.00 fine, and $100 special assessment. [R. 73; R. 74; R. 86]. On motion

of the United States the Court dismissed all remaining counts against Ms. Fluty, and no appeal was taken.

Fluty has now filed this instant motion to vacate pursuant to 28 U.S.C. § 2255. [R. 80]. Specifically, Fluty argues that her counsel was ineffective in three ways: (1) That her attorney did not explain her plea agreement to her, saying that she met with him on one occasion for ten minutes. She alleges telling him that she didn't understand, to which he responded that if she plead guilty to Count 1, all other counts would be dismissed; (2) That her attorney did not understand the facts of her case due to his failure to meet with her more than one time. She alleges that her attorney was unaware of the firearm enhancement under the guidelines until their "10-minute meeting". In addition, she alleges that she was unaware she was admitting guilt to having a drug ledger; and (3) That he failed to dispute the gun enhancement. [R. 80 at 4-6]. Fluty's Motion to Vacate stands ripe for adjudication.

### III. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law nor open to collateral attack, or otherwise must show that there was "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

Put another way, for relief under 28 U.S.C. § 2255, the prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir.

2003), cert. denied, 540 U.S. 1133 (2004); *see also Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). He must sustain these allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If the prisoner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Pough*, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

To prevail on an ineffective assistance of counsel claim under Section 2255, the petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . ." *Id.* Second, the petitioner must establish prejudice, by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### IV. ANALYSIS

Fluty's first argument is that her attorney did not explain her plea agreement to her, saying that she met with him on one occasion for ten minutes. She alleges telling him that she didn't understand, to which he responded that if she plead guilty to Count 1, all other counts would be dismissed. [R. 80 at 4]. These accusations are clearly refuted by the record. During the rearraignment, not only did she confirm that she spoke to her attorney about the plea agreement, but she also stated that she did not have any questions about the plea agreement. The transcript reads as follows:

> THE COURT: Okay. The indictment was returned in November of last year, ma'am. Did you receive a copy of the indictment at the time you were arraigned by the Magistrate Judge?
>
> DEFENDANT FLUTY: Yes, sir.
>
> THE COURT: And did you go through it with him?

DEFENDANT FLUTY: Yes, sir.

[R. 85 at 5-6].

* * *

THE COURT: Let me first ask you about the plea agreement itself, ma'am. It consists of a number of pages, total of six pages, 13 paragraphs, some of which have subparagraphs.

Is this your signature on the last page? It looks like it was signed today, heather S. Fluty?

DEFENDANT FLUTY: Yes, sir.

[R. 85 at 6, line 16-22].

* * *

THE COURT: All right. Although the plea agreement was signed today, ma'am, have you gone over it with counsel prior to today?

DEFENDANT FLUTY: We went over it this morning. I got the papers three days ago.

THE COURT: Okay. Had you had a chance to look at them before –

DEFENDANT FLUTY: Yes.

THE COURT: -- prior to today?

DEFENDANT FLUTY: Yes.

THE COURT: Okay. Did you have any questions about anything in the plea agreement that Mr. Pillersdorf could not answer for you?

DEFENDANT FLUTY: No, sir.

THE COURT: Mr. Pillersdorf, do you believe she understands all the provisions of the agreement?

MR. PILLERSDORF: I believe she does, Your Honor.

[R. 85 at 7-8].

| | |
|---|---|
| THE COURT: | All right. Very well. All right. Ma'am, has anyone forced you into entering this plea? |
| DEFENDANT FLUTY: | No, sir. |

[R. 85 at 8, line 13-16].

* * *

| | |
|---|---|
| THE COURT: | Okay. Thank you. All right. Now, the sentencing guidelines – I didn't bring a guideline book out. Oh, here it is. This is a 2016 version. This gets thicker every year. I don't think there were any changes that impact you in the 2016 version. There was an across-the-board reduction of two levels a year or so ago. That has already been factored into these guidelines, which have been recommended.<br><br>But have you gone over the sentencing guidelines and how they may apply in your case with Mr. Pillersdorf? |
| DEFENDANT FLUTY: | Yes, Sir. |

[R. 85 at 17, line 10-22].

| | |
|---|---|
| THE COURT: | Okay. Now, that last sentence of paragraph 7 provides that except for claims of ineffective assistance of counsel, the defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence. Have you spoken with Mr. Pillersdorf about that? |
| DEFENDANT FLUTY: | Yes, sir. |

[R. 85 at 23, line 10-17].

| | |
|---|---|
| THE COURT: | Now, within your plea agreement at paragraph 2 it sets forth the elements of that offense. Have you reviewed that with your attorney? |

      DEFENDANT FLUTY: Yes, sir.

      THE COURT:      Now, paragraph 3 sets forth a series of factual statements, beginning on page 1 of the plea agreement and continuing to the top of page 3, several paragraphs. Have you reviewed those facts with your attorney?

      DEFENDANT FLUTY: Yes, sir.

[R. 85 at 25, line 3-12].

      THE COURT:      Ma'am have you understood all the questions that I've asked?

      DEFENDANT FLUTY: Yes, sir.

      THE COURT:      Do you have any questions for me?

      DEFENDANT FLUTY: No, sir.

[R. 85 at 31-32].

Fluty's under oath affirmations at her rearraignment "'constitute a formidable barrier in any subsequent collateral proceedings' because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Calvey v. Burt*, No. 1-1926, 2018 WL 2015779, at *3 (6th Cir. April 30, 2018) (*citing Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Fluty claims that her attorney did not explain the plea agreement to her. [R. 80 at 4]. However, this is a clear contradiction of her sworn testimony. [R. 85 at 7]. For this reason, Fluty's argument fails to show the deficient performance or prejudice that is necessary to succeed on an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. Fluty can neither show that her attorney's conduct fell below reasonably professional assistance, nor does she demonstrate any prejudice. *Id*. 687-95.

Fluty's second argument is that her attorney did not understand the facts of her case due to his failure to meet with her more than one time. She alleges that her attorney was unaware of the

firearm enhancement under the guidelines until their "10-minute meeting". In addition, she alleges that she was unaware she was admitting to having a drug ledger as part of the factual basis for her plea. However, for the reasons that follow, these arguments will not allow Fluty any relief.

In her plea agreement Fluty clearly acknowledges and agrees to the gun enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), calling for the increase in the base offense level by 2 levels because firearms were possessed during the course of the drug conspiracy. [R. 60 at 3]. The Court inquired and confirmed that Fluty had the plea agreement to review prior to the rearraignment. [R. 85 at 7]. During Fluty's rearraignment, the Court addressed the two-level increase based upon the fact that firearms were possessed during the course of the conspiracy. [R. 85 at 18]. The Court clearly stated that the recommendation based on the calculation from the sentencing guidelines would be an "advisory guideline range of 57 to 71 months." *Id*. When Fluty was asked whether she understood that, she said; "Yes, sir." [R. 85 at 19]. On multiple occasions at her rearraignment she was asked whether she understood the plea agreement, and each and every time she responded that she did. *See* [R. 85]. The Court also asked Fluty's attorney if he had discussed the plea agreement with her, and he responded that he did— in fact— go over it with her. [R. 85 at 7-8]. As stated before, solemn declarations in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74. The Government also includes with its response an affidavit from Fluty's attorney. [R. 97-1]. In his affidavit, he clearly refutes Fluty's accusations. *Id*. As the gun enhancement was included as a part of the plea agreement, the fact that Fluty had the plea agreement three days prior to the rearraignment, the consistent statements of her attorney on the record and in his affidavit, and Fluty's inconsistent statements all run contrary to her accusation that her attorney was not aware of the facts of her case. Absent Fluty's accusations, there is no

proof or evidence to support an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687-95.

In addition to stating that her attorney did not understand the facts of her case, she also claims that she did not understand "that [she] was pleading guilty to a drug ledger that was not [hers]." [R. 80 at 5]. However, the drug ledger was specifically mentioned in her plea agreement and at her rearraignment. Her plea agreement states as follows,

> As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts: … On November 14, 2016 law enforcement executed a search warrant at the Fluty residence. During the execution of the search warrant, investigators discovered several firearms, including one assault rifle and a pistol found in a safe in the mater bedroom located near a pill bottle. *Investigators also discovered a suspected drug ledger documenting dates and amount of drug sales*….

[R. 60 at 1-2] (emphasis added). At her rearraignment, the Court specifically asked Fluty about the execution of the search warrant and if a drug ledger was found at her residence, along with a number of firearms, a pistol found in a safe in the master bedroom located near a pill bottle, and cash. [R. 85 at 26-27]. In response, Fluty affirmatively stated that all of those items were found at her residence by saying, "Yes, sir." [R. 85 at 27, line 3]. Thus, her claim that she did not \understand that she was admitting to the presence of a drug ledger that was not [hers]" is contradicted by the record and her plea agreement.

Fluty's final argument is that her attorney failed to object to the gun enhancement. [R. 80 at 6]. However, her attorney did object to the two-level enhancement in the presentence report. [R. 92 at 19-20]. Specifically, in her attorney's objection he states that "[he] went to Carter Jail on May 9, 2017, to discuss [the presentence report] with [Fluty]." [R. 92 at 19]. Her attorney argued that the pill bottle found near the gun was for Fluty's husband's medical issues, and was not

associated with the drug transactions. *Id*. Also, that her husband, who was sentenced prior to Fluty, was the reason guns were in the house, not Fluty. *Id*. The United States Probation Office responded by stating that, approximately fourteen firearms were found in the residence, two of which were found in a safe in the master bedroom near a pill bottle, and while they understand Fluty's argument, she did agree to the enhancement in the plea agreement. [R. 92 at 20]. Therefore, it is the opinion of the United States Probation Office that the two-level enhancement was appropriately applied. *Id*.

Section 2D1.1(b)(1) increases the calculation by two levels if a dangerous weapon (including a firearm) was possessed, during the illegal trafficking of drugs. "[This] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *United States v. Soto*, 85 Fed. Appx. 449, 454 (6th Cir. 2003). "The United States must prove, by a preponderance of the evidence, that the defendant actually or constructively possessed the weapon." *Id*. "Constructive possession includes ownership, dominion or control over the item itself, or dominion over the premises where the item is located." *Id*. (*citing United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998)). "Proof of possession is all that is required to trigger this enhancement; no evidence that the firearm was actually used or carried is necessary." *United State v. Kincaide*, 145 F.3d 771, 784 (6th Cir. 1998); *United States v. Howard*, 36 Fed. Appx. 758, 762 (6th Cir. 2002) (holding that enhancement was proper for an unloaded weapon because a 9-mm pistol in a room with $720 cash attributed to drug sales); *United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997) (government must provide evidence that weapon was found in same location where drugs or drug paraphernalia were stored or where part of the transaction occurred). "Further, once it is established that the defendant possessed a firearm, the

burden shifts to him to establish that it is clearly improbable that the weapon was connected to the offense." *Soto*, 85 Fed. Appx. at 454.

The Court addressed the objection at the sentencing hearing and— after brief oral arguments— overruled the objection. [R. 86 at 3-6]. In overruling the objection, the Court held that, Fluty had agreed to the enhancement in her plea agreement, that Fluty cannot show that it is clearly improbable that the guns were not connected to the offense as required by the application of the guidelines, and the presentence report is replete with examples of drug transactions taking place at the residence where the guns were found. [R. 86 at 6-8]. Fluty and her attorney seem to connect her 2-level enhancement with the gun found in the safe near the pill bottle. [R. 92 at 20]. However, it is not this gun alone, but the approximately fourteen other firearms found at the resident that show support for the 2-level sentencing enhancement. *See* [R. 92 at 8, pg. 24]. Fluty also states in her Motion to Vacate that her "attorney asked [her] if [she] touched the gun and [she] said no." [R. 80 at 6]. Yet, as explained above, no evidence that the guns were used or carried is necessary. *Kincaide*, 145 F.3d at 784. All that is needed is constructive possession, shown by dominion over the premises where the item is located. *Soto*, 85 Fed. Appx. at 454. As this was Fluty's home she knew of the guns and drugs and had dominion over the premises where the gun and drugs were located. Thus, the enhancement was appropriate in this case.

Fluty has failed to show that her attorney was either deficient or that she was prejudiced, both of which are necessary to prevail on an ineffective assistance of counsel claim under Section 2255. *Strickland*, 466 U.S. at 687. Because Fluty has failed to support her ineffective of assistance of claim arguments with any proof or evidence, and because the record directly contradicts her arguments, she should not be provided relief under 28 U.S.C. § 2255, and her motion to Vacate, [R. 80], should be denied.

## V. MOTION FOR HEARING

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). In the alternative, "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required 'to determine the truth of the petitioner's claims.'" *Ray v. United States*, 721 F.3d 758, 761 (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). The Sixth Circuit has observed that a § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). However, no hearing is required if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of facts. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

In this case, the undersigned will recommend Fluty's claims, found in her Motion to Vacate, be denied. Furthermore, there is no factual dispute necessitating an evidentiary hearing. Even though Fluty's burden for establishing a right to an evidentiary hearing is light, it cannot be met because her allegation(s) clearly contradict the record and are conclusion rather than statements of fact. For these reasons, an evidentiary hearing is not necessary.

## VI. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Fluty's Motion to Vacate [R. 80] be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Particularized objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 4th day of February, 2019.



Signed By:
*Edward B. Atkins*   EBA
United States Magistrate Judge